**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CHARLES KUCINSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-00342-RJD |
| | ) | |
| ROB JEFFREYS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:[1]**

This matter comes before the Court on the Motion for Leave to File Amended Complaint filed by Plaintiff Charles Kucinsky (Doc. 88). For the reasons set forth below, the motion is **GRANTED in part and DENIED in part**.

**Background**

Plaintiff Charles Kucinsky, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Dixon Correctional Center ("Dixon"), brought this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center ("Lawrence"). Following threshold review of the Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims:

Count 1: Eighth Amendment deliberate indifference to conditions of confinement claim against Jeffreys, Brookhart, Jennings, and Brown for housing Kucinsky in an isolated cell from February to September 2020.

Count 2: Eighth Amendment deliberate indifference to conditions of confinement

---

[1] This case has been assigned to the undersigned upon the parties' full consent pursuant to 28 U.S.C. § 636 (c) and Federal Rule of Civil Procedure 73. (Doc. 64).

claim against Jeffreys, Brookhart, Jennings and Brown for housing Kucinsky in restrictive housing with no out of cell time from September 2020 until December 2021.

Count 4:    Eighth Amendment deliberate indifference to medical condition claim against Jeffreys, Brookhart, Jennings, and Brown for declining to address Kucinsky's worsening mental health.

Count 5:    Eighth Amendment deliberate indifference to conditions of confinement claim against Jeffreys, Brookhart, Jennings, and Brown for housing Kucinsky in extreme isolation, unsanitary conditions, and lack of heat while in general population.

Count 6:    Eighth Amendment deliberate indifference claim against Jeffreys, Brookhart, Jennings, and Brown for serving inedible food.

Count 7:    Eighth Amendment deliberate indifference claim against Jeffreys, in his official capacity only, for the policy and practice of serving an unhealthy diet and inedible food.

Count 8:    First Amendment claim against Jeffreys, Brookhart, Jennings, and Brown for denying Kucinsky the ability to practice the tenets of his Catholic faith.

Count 9:    RLUIPA claim against Jeffreys, in his official capacity only, for denying Kucinsky the ability to practice the tenets of his Catholic faith.

Count 10:    Eighth Amendment deliberate indifference to mental health claim against Jeffreys, in his official capacity only, for a policy and practice of failing to offer mental health services to prisoners with history of mental illness.

(Doc. 16). The Court further dismissed as being insufficiently pled Count 3, wherein Plaintiff attempted to assert a due process claim for being placed in administrative segregation without any due process. (*Id.*).[2]

Between November 12, 2024, and June 24, 2025, Plaintiff moved four times to amend the Complaint to add allegations, parties, and the prayer for relief, to which Defendants objected. (Docs. 38, 40, 42, 51, 60, & 65). On February 20, 2026, the Court assigned Attorney Amanda Witt to represent Plaintiff. (Doc. 76). The Court further denied Plaintiff's pending motions to amend

---

[2] The Court also dismissed Defendants Brookhart, Jennings, and Brown from Counts 7, 9, and 10 because claims for injunctive relief can only be brought against the supervisory government officials who would be responsible for ensuring the injunctive relief will be carried out. (Doc. 16, p. 7 ).

the complaint and granted him leave to renew the motion after consulting with his counsel. (*Id.*). Thereafter, Plaintiff filed the Motion for Leave to File Amended Complaint (Doc. 88) that is currently pending before the Court. Defendants partially objected to the proposed amendment. (Doc. 89).

## Legal Standard

Under Rule 15, a party may amend its pleadings after a responsive pleading has been served "only by leave of the court or by written consent of the adverse party." Fed. R. Civ. P. 15(a); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002). While leave to amend should be given liberally, in their sound discretion, courts may deny a proposed amendment if the moving party has unduly delayed filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile. *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Bethany Pharm. Co. v. QVC Inc.,* 241 F.3d 854, 861 (7th Cir. 2001).

Further, under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## Discussion

The proposed amended complaint contains twelve counts. In Counts I, II, V, VI, and VIII, Plaintiff substantially reasserts the claims raised on those same counts in the original complaint. Defendants have not objected to any amendments on those counts. Accordingly, the motion is granted as it relates to Counts I, II, V, VI, and VIII of the proposed amended complaint. The Court turns to the remaining counts.

### Count III

In Count III of the proposed amended complaint, Plaintiff reasserts the due process claim

previously asserted in Count 3 of the original complaint. There, Plaintiff alleged that from September 2020 to December 2021, he was kept in restrictive housing for no penological reason. The Court dismissed that claim without prejudice because Plaintiff had failed to allege any facts about the cause for his placement in restrictive housing, Defendants' role in that placement, and what process he was due prior to his placement. (Doc. 16, pp. 7-8).

To survive screening, Plaintiff needs "to plausibly allege that he had a protected liberty or property interest and that constitutionally deficient procedures deprived him of that interest." *Evans v. Matushak*, No. 25-1887, 2026 WL 475063, at *2 (7th Cir. Feb. 19, 2026) (citing *Wilson v. Castaneda*, 143 F.4th 814, 817 (7th Cir. 2025); *Prude v. Meli*, 76 F.4th 648, 656 (7th Cir. 2023)). "In the context of continued administrative confinement, inmates are entitled to 'periodic review,' which—like the initial placement decision—may be 'an informal and nonadversary' process. *Felton v. Brown*, 129 F.4th 999, 1008 (7th Cir. 2025) (quoting *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012)). While the prison officials have considerable discretion in the "frequency of this periodic review," the Seventh Circuit has made clear that such review must "be sufficiently frequent that administrative segregation does not become 'a pretext for indefinite confinement of an inmate.'" *Id.*

In the proposed amended complaint, Plaintiff alleges that from February to September 2020, he was housed in an administrative detention cell at Lawrence. (Doc. 88-1, pp. 27-28). On September 15, 2020, Defendant Jennings issued an "Administrative Detention Review" memorandum stating that Plaintiff "was approved for release back to General Population." (*Id.*). Despite Defendant Jennings' directive in the Administrative Detention Review memorandum, Plaintiff continued to be confined to a restrictive housing unit at Lawrence until approximately December 2021. (*Id.*). Plaintiff alleges that he was given no penological or disciplinary reason for not being moved to a general population cell; he was never provided written notice of any charges or rule violations. Plaintiff alleged that he filed multiple grievances complaining that he was

classified as general population but was confined to restrictive housing without due process. (*Id.*). He was told that cell assignment was an administrative decision and that Defendant Brookhart and Jennings, the Warden and Assistant Warden of Operations at Lawrence during the relevant time, were aware of Plaintiff's placement in restrictive housing. Defendant Jeffreys, as then-IDOC Director, concurred with this response.

The Court finds that at this stage, Plaintiff has plausibly alleged that Defendants Brookhart and Jennings deprived him of a protected liberty interest by allowing his indefinite confinement in administrative segregation without due process and despite the Administrative Detention Review memorandum, which approved his release back to General Population. *See also Evans v. Retzlaff*, No. 24-CV-1372-BHL, 2026 WL 771674, at *1 (E.D. Wis. Mar. 19, 2026) (allowing a due process claim for indefinite confinement in administrative segregation to proceed in light of the Seventh Circuit's inconsistent case law on that issue).

Plaintiff, however, fails to assert a due process claim against Jeffreys in that he does not allege Jeffreys' personal involvement in Plaintiff's placement in the administrative segregation, other than denying Plaintiff's grievances. *See Thomas v. Knight*, 196 F. App'x 424, 429 (7th Cir. 2006) (explaining that prison officials cannot incur § 1983 liability just by participating in the grievance process). Plaintiff also claims that Jeffreys was responsible for safeguarding Plaintiff's due process rights, but there is no *respondeat superior* under § 1983. In other words, Jeffreys cannot be liable solely on the basis of his supervisory position. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Plaintiff does not allege any further involvement by Defendant Jeffreys outside of the grievance process. Accordingly, Count III of the proposed amended complaint cannot proceed against Jeffreys.

**Count IV**

In Count IV of the proposed amended complaint, Plaintiff reasserts his Eighth Amendment deliberate indifference to medical condition claim against Jeffreys, Brookhart, Jennings, and

Brown for declining to address Plaintiff's worsening mental health symptoms (Count 4 of the original complaint) but seeks to add Hughes, in her individual capacity, as a defendant. As Defendants correctly point out, the events that gave rise to that claim occurred between February 2020 and December 2022. The proposed amended complaint does not include any allegations against Hughes in her individual capacity as to that timeframe. Even more, Plaintiff alleges in the proposed amended complaint that Latoya Hughes was Acting Director of the Illinois Department of Corrections (IDOC) from April 2023 to October 2025, when she became Director of the IDOC. (Doc. 88-1, p. 1). Based on Plaintiff's allegations, Latoya Hughes could not possibly have personal involvement in Plaintiff's claims from February 2020 to December 2022. Accordingly, Defendant Hughes is **DISMISSED** from Count IV of the proposed amended complaint, and that count may proceed against Defendants Jeffreys, Brookhart, Jennings, and Brown.

### Counts VII, IX, & X

In Counts VII, IX, and X of the proposed amended complaint, Plaintiff reasserts his request for injunctive relief under RLUIPA for being denied the ability to practice the tenets of his Catholic faith (Count IX) and for IDOC's unconstitutional practice and policy of serving an unhealthy diet and inedible food (Count VII) and of failing to offer mental health services to prisoners with history of mental illness (Count X). Plaintiff alleges that despite having been transferred from Lawrence since February 2023 and currently being housed at Dixon Correctional Center ("Dixon"), the violations asserted in those claims continue in his current facility. Defendants counter that those claims have been rendered moot after Plaintiff's transfer from Lawrence and that any claims regarding violations in his current facility are separate new claims that must be denied.

The Court disagrees. While a "prison transfer might moot a claim for injunctive relief if the transfer means that the inmate no longer is laboring under the allegedly unconstitutional policy or practice," this is not the case when the inmate challenges a system-wide policy. *See West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015) (unpublished). When an inmate "is challenging a

condition that stems from a system-wide policy, transferring him between prisons in the same system does not moot his claim. If the policy applies at both prisons, an injunction may still be necessary to rectify ongoing and future harm." *Williams v. Hughes, et al.*, Case No. 3:24-CV-1257-NJR, 2026 WL 1693770, at *4 (S.D. Ill. June 11, 2026) (internal citations omitted).

Here, the proposed amended claims add factual allegations showing that the alleged policies and practices that gave rise to Plaintiff's injunctive relief claims were system-wide and continued to every facility in which Plaintiff has been housed since his transfer from Lawrence. (Doc. 88-1, pp. 13-21, 34-35). Accordingly, the Court finds that Plaintiff's injunctive relief claims raised in Counts VII, IX, and X of the proposed amended complaint have not been rendered moot after Plaintiff's transfer from Lawrence. Plaintiff will be allowed to proceed with **Counts VII, IX, & XI** against Defendant Hughes in her official capacity.

### Counts XI & XII

In Counts XI and XII, Plaintiff seeks to add two new claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Specifically, Plaintiff alleges that the IDOC violated his rights under the ADA and RA, *inter alia*, by "[s]ubjecting him to isolating confinement that disparately impacted him due to his mental illnesses," by "[r]efusing to provide treatment or allow Plaintiff to take medication for his ADHD;" by "[s]egregating him in conditions that are harmful to his mental illnesses and that deny him equal access to programs, services, and activities that are available to those without disabilities; and by [f]ailing to make reasonable modifications to IDOC policies, procedures, and practices in order to accommodate the disability needs of Plaintiff in order to prevent discrimination and harm." (Doc. 88-1, pp. 41-43).

To assert claims under the ADA and RA, the plaintiff must allege that he is a qualified individual with a disability who was denied the benefits of the services, programs, or activities at the prison by reason of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Further, the ADA and RA require a prison to reasonably modify its policies or practices to avoid discrimination based

on disability. 28 C.F.R § 35.130(b)(7); 28 C.F.R. § 41.53.

Here, the proposed amended complaint sufficiently states claims under ADA and RA, and Defendants do not argue otherwise in their response. They claim, however, that those claims are barred by the applicable two-year statute of limitations. While Plaintiff did not assert ADA and RA claims in his original complaint, his Eighth Amendment claims for deliberate indifference to his mental health condition by declining to address his worsening mental health and by failing to offer mental health care arose out of the same nucleus of operative facts: the treatment that Plaintiff received for his mental health condition while at Lawrence. Accordingly, Plaintiff's ADA and RA claims relate back to the filing of the original complaint and are not time-barred. *See* Fed. R. Civ. P. 15(c)(1)(B) (providing that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading;"); *see also Cleary v. Philip Morris Inc.,* 656 F.3d 511, 515 (7th Cir. 2011) ("an amendment relates back when it arises out of the same transaction or occurrence set up in the original pleading."). Accordingly, Plaintiff may proceed in his ADA and RA claims asserted in Counts XI and XII of the proposed amended complaint against Defendant Hughes in her official capacity.

**Allegations from February 2023 to the present**

In their response to the motion, Defendants ask the Court to strike Plaintiff's allegations in the proposed amended complaint as to events that took place from February 2023 to the present, including Plaintiff's transfer from Lawrence to Western Illinois Correctional Center, Joliet Treatment Center, Shawnee Correctional Center, and Dixon Correctional Center. As stated above, those allegations are relevant in showing that Plaintiff's injunctive relief claims did not become moot after Plaintiff's transfer from Lawrence. The Court does not read the amended complaint as adding new claims for monetary relief as to any constitutional violations that occurred in any of the facilities in which Plaintiff was transferred after the filing of the original complaint.

Accordingly, Defendants' request that those allegations be stricken is **DENIED**.

### Conclusion

For these reasons, Plaintiff's Motion for Leave to File Amended Complaint (Doc. 88) is **GRANTED in part and DENIED in part**. Plaintiff is granted leave to file the proposed amended complaint omitting the claim against Defendant Jeffreys in Count III and the claims against Defendant Hughes in Count IV. Plaintiff's counsel shall file his Amended Complaint by June 25, 2026. Once the Amended Complaint has been filed, the Clerk of Court is **DIRECTED** to substitute Defendant Hughes in her official capacity for Defendant Jeffreys.

**IT IS SO ORDERED.**

**DATED: June 22, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**